934 F.2d 1551
 19 U.S.P.Q.2d 1401
 COACH HOUSE RESTAURANT, INC., Plaintiff-Appellant,
v.
COACH AND SIX RESTAURANTS, INC., Defendant-Appellee.
 No. 89-8815.
 United States Court of Appeals,
Eleventh Circuit.
 July 11, 1991.
 
 Nicholas L. Coch, New York City, for plaintiff-appellant.
 Virginia S. Taylor, Miles J. Alexander, Kilpatrick & Cody, Atlanta, Ga., Donald A. Kaul, Brownstein, Zeidman & Schomer, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before JOHNSON and HATCHETT, Circuit Judges, and EDWARD S. SMITH*, Senior Circuit Judge.
 EDWARD S. SMITH, Senior Circuit Judge:
 
 
 1
 Petitioner, The Coach House Restaurant, Inc. (Coach House) seeks to cancel the federal registration of the servicemark owned by the registrant, The Coach and Six Restaurants, Inc. (Coach and Six). The Trademark Trial and Appeals Board (TTAB) estopped the petition because it found that petitioner had acquiesced in registrant's use of the mark. Petitioner appealed the decision to the United States District Court for the Northern District of Georgia and added new claims of servicemark infringement and unfair competition. Relying on the findings and conclusions of the TTAB, the district court granted summary judgment in favor of the registrant. Petitioner appeals to this Court for review. We reverse the grant of summary judgment and remand the case to the district court for trial.
 
 Facts
 
 2
 In 1953, Coach House began using the "coach and six horses" logo as a service mark for The Coach House Restaurant in New York, New York. In 1962, registrant opened The Coach and Six Restaurant in Atlanta, Georgia. The corporate president of Coach House is Leon Lianides. Lianides was also instrumental in formation of Coach and Six, although Harold Soloff was the majority owner of the Coach and Six corporation at its inception. Moreover, Lianides served on Coach and Six's board of directors until 1963 and was a shareholder of the registrant until 1968.
 
 
 3
 Because registrant could not afford to have a new logo created for the restaurant, Lianides suggested that the "coach and six horses" logo be used. Registrant has been continuously using the logo since that time. At one point during registrant's use of the "coach and six horses" logo, Lianides suggested that Soloff discontinue the affiliation between the two restaurants. Lianides was apparently concerned that the quality of registrant's restaurant had diminished, and registrant's affiliation with petitioner could injure the public reputation of petitioner's restaurant. Subsequently, the quality of registrant's restaurant improved, and Lianides never again objected to the affiliation. Even after Lianides sold his stock in registrant in 1968, he continued to render advice until he terminated all relations with the registrant after Soloff died in 1974.
 
 
 4
 Thereafter, and unbeknownst to petitioner, Coach and Six applied for and received a federal registration of its servicemark on December 29, 1981. The registered mark comprises two components as shown below: (1) the "coach and six horses" logo underlain by (2) the words "The Coach and Six Restaurant."
 
 
 5
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 6
 The registered mark appropriates the identical "coach and six horses" logo that petitioner uses as its logo.
 
 
 7
 Petitioner discovered the registration which appropriated its logo and objected to it by February 23, 1983. Coach House petitioned the TTAB to cancel the registration of the service mark because Coach House has the prior trade identity rights in the mark. In the initial proceeding, the TTAB determined that petitioner had acquiesced in registrant's use of the mark.[1] Therefore, the TTAB determined that the cancellation petition was estopped, unless petitioner could show that confusion between the two marks is inevitable.[2] At trial before the TTAB, petitioner asserted that its logo, unaccompanied by the name, is sufficiently similar to the registered mark to cause inevitable confusion. The TTAB compared only petitioner's logo against the registered mark which comprises both the registrant's name and the logo and found that there was no inevitability of confusion. Therefore, the TTAB concluded that the petition to cancel was estopped by acquiescence. The TTAB also denied petitioner's claim that the registrant procured the registration by making false statements to the PTO.
 
 
 8
 On review, the district court[3] determined that because petitioner offered no new evidence indicating that the TTAB was wrong on the cancellation issue, Freedom Savings & Loan Association v. Way requires the court to defer to TTAB's judgment that the relief was estopped by acquiescence.[4] Petitioner also instituted a new additional claim of service mark infringement and unfair competition before the district court. The district court deferred to the TTAB's finding of no inevitability of confusion, and concluded there could be no likelihood of confusion, an essential element of service mark infringement. In addition to concluding that the infringement claim failed, the court alternatively concluded that laches estopped petitioner from proceeding on the new infringement and unfair competition claims. Consequently, the district court granted summary judgment to registrant on all claims pending before the court.
 
 
 9
 Petitioner appeals to this Court citing three issues: that the TTAB and the district court erred in finding that petitioner was barred by acquiescence from cancelling the registration, the district court erred in finding both no likelihood of confusion and that registrant committed no fraud on the PTO. Registrant asserts that the TTAB and the district court were correct and that petitioner has filed a frivolous appeal.
 
 Standard of Review
 
 10
 A district court may not reverse findings of the TTAB, "unless the contrary is established by testimony which in character and amount carries thorough conviction."[5] The district court can reverse if it concludes that the law applied by the TTAB was incorrect.[6] Moreover, any equitable rulings rendered by the TTAB may be reversed if the TTAB abused its discretion.[7]
 
 
 11
 The district court granted summary judgment to registrant on the cancellation claim because petitioner failed to present new evidence that would impugn the TTAB's ruling that petitioner was estopped by acquiescence. Consequently, the grant of summary judgment on the cancellation petition indicates that the district court, relying on the TTAB's factual findings, concluded that there was no abuse of discretion in the TTAB's decision. Although the unfair competition and infringement claims were initially brought before the district court, the court relied on the findings of the TTAB and granted summary judgment on the new claims also in favor of the registrant.
 
 
 12
 Accordingly, we review the district court grant of summary judgment to determine if genuine issues of material fact are involved and whether the registrant was entitled to judgment as a matter of law and equity.[8] The facts found by the TTAB presented in the record to the district court will be deemed established, hence, not at issue, unless we are impressed with a thorough conviction that the findings are erroneous.[9] We view all the evidence presented before the district court pertaining to unestablished facts in a light most favorable to petitioner.[10]
 
 Petition to Cancel
 
 13
 In order to prosecute successfully a petition for cancellation, petitioner must prove: (1) That it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration.[11] The first element is ostensibly satisfied because petitioner claims to have prior identity rights in the mark, and a registration of the same mark could give the registrant an incontestable right to own and exclusively use the mark anywhere in the United States.[12] Hence, petitioner must prove a valid reason for discontinuing registration.
 
 
 14
 Because the mark at issue has been on the federal Principal Register in registrant's name for less than five years, the mark may be cancelled if petitioner can prove that the registration should have been barred in the first instance under Lanham Act Sec. 2.[13] Petitioner asserts that Lanham Act Sec. 2(d)[14] barred registration of the mark because petitioner was the prior user of the mark which is confusingly similar to the registrant's mark.
 
 1. Acquiescence in Registration Defense
 
 15
 The district court adopted the TTAB equitable decision to estop the petition to cancel the registration because petitioner had acquiesced in the registrant's use for such a long time. Because acquiescence is an equitable defense, it will be reviewed for an abuse of discretion.[15]
 
 
 16
 Acquiescence is a doctrine which is very similar to laches. Both are equitable defenses that are recognized in inter partes proceedings before the TTAB[16] and are capable of estopping a petitioner from asserting dormant rights against a defendant. The difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent.[17]
 
 
 17
 The defense of acquiescence requires proof of three elements: (1) That petitioner actively represented that it would not assert a right or a claim; (2) that the delay between the active representation and assertion of the right or claim was not excusable; and (3) that the delay caused the registrant undue prejudice.[18] The TTAB found that petitioner supplied the logo to registrant and permitted registrant to use it for a continued period of twenty years, ending when petitioner instituted this proceeding. The TTAB concluded that acquiescence was applicable and estopped plaintiff from petitioning for a cancellation. We conclude that the TTAB abused its discretion by failing to observe the distinction in this case between acquiescence as to use and acquiescence as to registration.
 
 
 18
 Although petitioner actively represented that the registrant could use its logo, petitioner did not represent or imply that it would allow registrant to register the petitioner's service mark on the federal Principal Register. Therefore, no period of delay could have begun running as to registration, until petitioner had notice that registrant was doing something that would generate a claim or right of petitioner. Because registration on the federal principal register is constructive notice of registrant's claim of ownership,[19] the earliest point at which the delay period began running was the time of registration.
 
 
 19
 The registration was awarded to registrant on December 29, 1981, and petitioner discovered the registration and objected to it by February 23, 1983. Thus, the period of delay as to registration was, at most, just over a year. Despite their surprise in seeing its logo on the Principal Register, petitioner was able to object in a short period of time. According to these facts, the period of delay is not unreasonable and certainly not inexcusable under the circumstances.
 
 
 20
 The absence of one element of the acquiescence case is sufficient to deny the equitable relief requested.[20] We have recognized that there was no active permission to register and that the delay in asserting the right was not unreasonable. With the absence of these two elements there is no need to examine the undue prejudice element.
 
 
 21
 The equities of this case weigh heavily in favor of petitioner on the issue of acquiescence in the registration. Therefore, we conclude that the record facts show that the TTAB abused its discretion by estopping petitioner from pursuing the cancellation proceeding because of petitioner's acquiescence in use. Consequently, registrant's defense of acquiescence as to registration fails in a court of equity.
 
 2. Grounds for Cancellation
 
 22
 Because we conclude that the acquiescence in registration defense does not estop plaintiff's cancellation petition, we turn to the merit of the cancellation petition. In order to cancel a registration under Lanham Act Section 2(d) in this case, petitioner must prove: (1) that the registered mark resembles petitioner's mark,[21] (2) that petitioner acquired trade identity rights in the mark before the registrant used the mark,[22] and (3) that the registered mark is likely to cause confusion when used in connection with the services of registrant.[23]
 
 
 23
 a. Resemblance
 
 
 24
 It is evident that the registered mark resembles petitioner's mark because both marks utilize the identical logo. Despite the TTAB's finding that the two marks were not sufficiently similar to cause confusion, which we will address later, the record shows that the two marks do possess identical logos. Thus, based on the evidence in the record, the first element of resemblance appears to be satisfied.
 
 
 25
 b. Priority of Trade Identity Rights
 
 
 26
 Unrefuted evidence indicates that petitioner first used the mark in 1952, and registrant began using the mark in 1962, ten years later. Clearly, petitioner was the first to use the mark. However, petitioner must have obtained trade rights in the mark prior to registrant's first use.[24] Because petitioner's mark is not registered on the Principal Register, we must determine when petitioner obtained rights in the "coach and six horses" logo.
 
 
 27
 A business will obtain rights in the mark upon first use only if the mark is inherently distinctive.[25] If the mark is not inherently distinctive, a business may obtain ownership rights in the mark when the mark attains a secondary meaning.[26] Therefore, the date at which petitioner obtained rights in the mark is dependent upon the distinctiveness of the mark.
 
 
 28
 The distinctiveness of the mark at issue refers to how easily customers identify petitioner's mark with the represented services. There are four categories of distinctiveness listed in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.[27] The demarcation between each category is more blurred than it is definite.[28] 8] A term which suggests the basic nature of the service is generic and is typically incapable of achieving service mark protection because it has no distinctiveness.[29] A descriptive term merely identifies a characteristic or quality of a service.[30] Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning.[31] A suggestive term suggests the characteristics of the service "and requires an effort of the imagination by the consumer in order to be understood as descriptive."[32] Because a suggestive service mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable.[33] An arbitrary or fanciful service mark is also inherently distinctive because the term bears no relationship to the service. Thus, such marks are protectable without proof of secondary meaning.[34]
 
 
 29
 If a court finds that the term is descriptive, and hence not inherently distinctive, petitioner must establish that a secondary meaning attached before registrant began using the logo in order to obtain trade identity rights.[35] Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service.[36] In the absence of consumer survey evidence, four factors can be considered in determining whether a particular mark has acquired a secondary meaning:
 
 
 30
 (1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].[37]
 
 
 31
 Both the distinctiveness categorization[38] and the existence of a secondary meaning are questions of fact,[39] which were not addressed by the district court or the TTAB. Therefore, these genuine issues of material fact must be resolved by a trier of fact.
 
 
 32
 c. Likelihood of Confusion
 
 
 33
 The last element required to successfully prosecute a registration cancellation petition is that the mark is likely to cause confusion when used to represent registrant's business. At trial, the TTAB explained that although petitioner presented evidence of actual confusion, there was no evidence that confusion stemmed from the use of the "coach and six horses" logo. Moreover, the TTAB found it significant that petitioner asserted only his logo against registration of the registrant's mark, contending that the identity of the two logos would cause inevitable confusion. Consequently, the TTAB compared only petitioner's logo without the word portion, "The Coach House," against the registered mark which comprised both the logo and the word mark "The Coach and Six Restaurant." The TTAB determined that the word portion is the most distinctive component of most service marks, especially in the case of restaurants, and should be given more weight than the logo, in accord with In re Appetito Provisions Co.[40] Based on this rationale, the TTAB found that there was no inevitability of confusion.[41]
 
 
 34
 Although the TTAB found that there was no inevitability of confusion, all that must be shown to cancel registrant's registration is that there is a likelihood of confusion.[42] Because the present inquiry invokes a lower standard of confusion, we need not defer to the TTAB finding that confusion is not inevitable. However we will accept those facts found by the TTAB which impelled the finding of no inevitable confusion, unless we are impressed with a thorough conviction that the finding is erroneous.
 
 
 35
 The TTAB's factual basis for finding no inevitability of confusion is that actual confusion was not sufficiently proved and that the registered mark and petitioner's mark are not sufficiently similar. However, our precedent requires utilization of a more comprehensive multifactor analysis.[43] Although the TTAB need not utilize this multifactor analysis to be upheld by a district court in this Circuit, we do require the district court to analyze the confusion issue via the multifactor analysis to determine if the result comports with that of the TTAB.[44] The relevant factors are: (1) The distinctiveness of the mark at issue, (2) the similarity of the design, (3) the similarity of the service, (4) the similarity of service outlets, (5) the similarity of customers, (6) the similarity of advertising media utilized, (7) the defendant's intent, and (8) any actual confusion.[45] Because neither the TTAB or the district court utilized this multifactor analysis, we determine whether the facts found by the TTAB are sufficient to compel a conclusion via the multifactor analysis.
 
 
 36
 The distinctiveness of the mark has been previously discussed with respect to the priority of trade identification rights. Regarding the confusion issue, a very distinct mark which holds a formidable place in the consumer psyche is more susceptible to confusion from similar marks. Accordingly, distinct marks are afforded more protection from confusingly similar marks.[46] Hence, the issue of distinctiveness is relevant to both the likelihood of confusion and the priority of trade identification rights issues.
 
 
 37
 As to the similarity of the marks, the logo portion on the two marks are identical. The TTAB compared only petitioner's logo to the registered mark which comprises both the logo and the name because petitioner only asserted that its logo mark should have prevented the registration. The TTAB's finding that the addition of the word mark in the registered mark somehow operates to detract from the identity of the logos and render the two marks sufficiently dissimilar causes us confusion. Because both marks use an identical logo, the marks must be very similar, regardless of the attendant name of the restaurant. Consequently, we are left with a thorough conviction that the TTAB finding that the marks are not very similar is erroneous. Accordingly, we cannot accept the TTAB finding on this factor.
 
 
 38
 Although both marks represent restaurants, the TTAB made no finding on whether the services represented by both marks are identical.
 
 
 39
 Although the TTAB did not directly address the next factor, a close similarity exists in the restaurants themselves. This similarity was influenced by Mr. Lianides who was the sole owner of Coach House and was one of the shareholders and directors of Coach and Six from its inception in 1962 until 1968. The TTAB found that "Mr. Lianides was the guiding force in setting up the new restaurant, training the personnel, including the cook, and designing the menu as well as the restaurant decor." Evidently, registrant's restaurant was modeled to emulate the same ambiance and provide the same cuisine as does the petitioner's restaurant. Therefore, it appears that both restaurants are similar.
 
 
 40
 Because the similarity of customers was not addressed by the TTAB, this factor requires more attention. It would seem that the similar menu and ambience utilized in both restaurants would attract the same customers. Registrant points out that confusion should be mitigated because petitioner's restaurant is located in New York and registrant's restaurant is located in Georgia. However, petitioner correctly answers that geographical remoteness between the two services is irrelevant when one party is seeking a federal registration. We agree because Section 7(b) of the Lanham Act[47] "creates a presumption that the registrant has the exclusive right to use its mark throughout the United States."[48] Even if registrant does not operate in the discrete, remote area in which petitioner uses its similar mark, a court will enjoin use by petitioner if the registrant decides to expand its business into that area.[49] In examining the merits of a cancellation petition, the registered mark must be judged against challenging marks as if the registered mark was being used everywhere in the nation. Therefore, when the grant of a federal registration is contested, we conclude that the relevant market is the entire United States. Consequently, geographical remoteness is irrelevant to this likelihood of confusion inquiry.
 
 
 41
 As to the similarity of advertising, the TTAB found that "[t]here was some crossover advertising in the form of references to [petitioner's restaurant] in [registrant's] menus, in matchbooks and in a framed article from Gourmet magazine hanging in [the] lobby" of registrant's restaurant. The TTAB made no findings as to the medium of advertising used by both parties other than the finding that both restaurants were critically acclaimed in the newspapers. Hence, this factor demands more attention.
 
 
 42
 The findings of the TTAB indicate that registrant did not adopt petitioner's logo with an intent to cause confusion. However, at the time the identical logo was adopted by registrant, Mr. Lianides was petitioner's sole owner and a shareholder and director of the newly formed Coach and Six. The initial impetus behind using the same logo was to save cost, but it is evident that there was also a joint effort between registrant and petitioner to link the two restaurants together. This effort is demonstrated by the TTAB finding that Mr. Lianides was very influential in designing the ambiance and the accoutrements of the restaurant.
 
 
 43
 Although we do not believe these facts evince an intent to cause confusion per se, we conclude that the adoption of the identical mark, facilitated through what was then a friendly relationship, was one of a series of steps designed to create a connection in the customer's mind between the two restaurants. We agree with the finding of the TTAB that the original intent in adopting the identical logo was not to cause confusion. However, the fact that the logo was adopted with an initial intention to link the two restaurants together does support a finding of a likelihood of confusion.
 
 
 44
 As to the last element of actual confusion, the TTAB did find that there were inquiries as to the affiliation between the two restaurants. The TTAB decided that the confusion stemmed only from Mr. Lianides' association with both restaurants which terminated in September of 1974 and not from the extreme similarity between the logos. Consequently, the TTAB found that "the evidence fails to show that the use of the 'coach and six horses' logo contributed in any way to these inquiries."[50] The TTAB's interpretation of the evidence is just too arbitrary for us to accept. It seems obvious that customers that have dined at both restaurants have seen the "coach and six horses" logo on the entrance and pervading the inside of both restaurants. Any question arising in a patrons's mind as to the affiliation between the two restaurants must have been influenced, at least in part, by the extreme similarity between the logos at both restaurants. As a result, we come to a thorough conviction that the TTAB finding that there was no actual confusion is erroneous. However, this factor demands more attention and should be addressed on remand.
 
 
 45
 By comprehensively analyzing the likelihood of confusion issue through the multifactor method required in this Circuit, we conclude that there are several genuine issues of material fact which should be tried by the district court. Moreover, the servicemark resemblance and the priority of trade identity rights elements present several genuine issues of material fact. Consequently, we remand the cancellation petition to the district court to hold a trial to resolve these factual issues.
 
 
 46
 Servicemark Infringement and Unfair Competition Claims
 
 
 47
 The district court also granted summary judgment against petitioner's newly instituted servicemark infringement and unfair competition claims. The district court first concluded that the prima facie cases of the two new claims were not satisfied because it found no likelihood of confusion which is a requisite element of both claims. The court found no likelihood of confusion by deferring to the TTAB's finding that there was no inevitability of confusion. The district court concluded, in the alternative, that petitioner was estopped by laches from asserting the two new claims against the registrant.
 
 1. Acquiescence as to Use
 
 48
 The district court's conclusion that petitioner was estopped by laches from suing registrant for service mark infringement and unfair competition, has merit. We note that acquiescence, instead of laches, is the proper defense in this context because petitioner actively consented to registrant's use of the "coach and six horses" logo.[51] Petitioner asserts that its acquiescence in registrant's use of the mark was merely an implied license to use which can be revoked at anytime. Although there was no formal agreement, there is evidence that petitioner was willing to allow registrant to use the mark as long as registrant maintained the quality of the restaurant. Petitioner asserts that registrant's attempt to register petitioner's mark on the federal Principal Register triggered its revocation of the implied license.
 
 
 49
 Acquiescence to one's use of a trademark is analogous to an implied license to use the mark.[52] Usually an implied license is terminable at will.[53] Therefore, petitioner may terminate the license at any time and sue registrant for trademark infringement and unfair competition for any use subsequent to termination, if petitioner's acquiescence does not estop it from claiming an exclusive right to use the mark.[54]
 
 
 50
 The same three elements applied in the acquiescence in registration are applicable to the acquiescence in use issue: (1) That petitioner actively represented that it would not assert a right or a claim; (2) that the delay between the active representation and assertion of the right or claim was not excusable; and (3) that the delay caused the registrant undue prejudice.[55] There is no doubt that in 1962, petitioner furnished the logo to registrant to use in Atlanta. Hence, petitioner actively consented to registrant's use of the logo without fear of reprisal. The earliest time that petitioner objected to registrant's use was at the time that petitioner commenced the cancellation proceedings in 1982. Thus, the delay between the time the representation was made in 1962 and the assertion of the right in 1982 was at least twenty years. The TTAB found this delay to be inexcusable.
 
 
 51
 The TTAB also found that by advertising and using the mark for twenty years, registrant accumulated "extensive goodwill [in] the business associated with that mark, in reliance upon the lack of objection from petitioner."[56] The TTAB consequently found that the registrant will suffer undue prejudice if forced to cease using the mark. The TTAB's ruling on acquiescence as to use does not constitute an abuse of discretion. Hence, petitioner is estopped from prosecuting their service mark infringement and unfair competition action against registrant with regard to the "Coach and Six Restaurant" in Atlanta, unless there is an inevitability of confusion between the two marks.[57]
 
 2. Inevitability of Confusion
 
 52
 Although petitioner has acquiesced in use of their logo by the registrant, the public interest in preventing confusion around the marketplace is paramount to any inequity caused the registrant.[58] Consequently, if there is an inevitability of confusion, petitioner's law suit may be revived from estoppel.[59]
 
 
 53
 The TTAB did find that there was no inevitability of confusion, but they did not use the multifactor analysis required in this Circuit. As stated earlier, the district court must review the TTAB decision to see if it comports with the result compelled by the multifactor analysis. Although the standard of confusion required for a finding of inevitability of confusion is an increment higher than that required for a finding of a likelihood of confusion, we have already seen that the confusion issue presents genuine issues of material fact. Therefore, we reverse the grant of summary judgement and remand the issue to the district court to conduct a multifactor analysis of the confusion issue to see if the result comports with the TTAB result.
 
 
 54
 The inevitability of confusion issue has a complexion different from the likelihood of confusion issue because the latter determination was relevant to cancellation proceedings before the PTO. This present inevitability of confusion inquiry is pertinent to an infringement and unfair competition litigation, which places the geographical remoteness issue in a different perspective.
 
 
 55
 As stated earlier, the geographical remoteness issue is not relevant to the likelihood of confusion regarding the cancellation petition because the registration of a servicemark presumes that the registrant has the unlimited right to use the servicemark anywhere in the United States. Therefore, in examining the merits of a cancellation petition, the registered mark must be judged against challenging marks as if the registered mark was being used everywhere in the nation.
 
 
 56
 On the other hand, in an unfair competition action, especially where the plaintiff's mark is not registered, there is no presumption that the mark is being used nationwide. Accordingly, the inevitability of confusion inquiry pertains to whether the public interest in preventing similar marks from confusing those consumers in the marketplace should exempt petitioner's infringement lawsuit from estoppel by acquiescence. If registrant and petitioner both operate in discrete, remote areas, there is a smaller likelihood that there will be confusion. This consideration is particularly significant to the present case where petitioner is based in New York and the registrant is based in Georgia.
 
 
 57
 Furthermore, if geographical remoteness is proved, the Tea Rose-Rectanus doctrine may be invoked. The doctrine, in effect, states that although geographical remoteness can minimize the likelihood of confusion, if the alleged infringer has appropriated the mark with a purpose inimical to the interest of the plaintiff, the remoteness of use may be disregarded.[60] Consequently, in order for the remoteness factor to militate against a finding of inevitable confusion, there are two elements which must be considered: (1) whether the registrant's use is in good faith;[61] and (2) whether registrant's use occurs in a remote area.[62] Both of these issues are pertinent to the inevitability of confusion inquiry and present genuine issues of material fact. Therefore the inevitability of confusion issue shall be remanded to the district court for trial.
 
 3. Claims may be Revived
 
 58
 In the event that petitioner prevails on the cancellation petition and proves the inevitability of confusion required to survive the estoppel by acquiescence in use at trial, the district court will have to address petitioner's newest claims of servicemark infringement and unfair competition. To prove servicemark infringement, petitioner must prove: (1) That registrant used a term in commerce (2) in connection with their services (3) which is likely to be confused with the term (4) in which petitioner possesses the right to use to designate their services.[63] Although a broader cause of action, "[a]n unfair competition claim, like infringement, calls on the plaintiff to show a confusing similarity between services."[64]
 
 
 59
 The district court granted summary judgment in both the unfair competition and infringement claims, because the TTAB found that the two marks posed no inevitability of confusion. We conclude that the district court erred by deferring to the TTAB's finding of no inevitability of confusion to preclude the servicemark infringement and unfair competition lawsuit. Although a likelihood of confusion is an essential element of the cause of action,[65] requiring petitioner to prove that there was an inevitability of confusion holds petitioner to a higher standard of confusion than that required to establish the asserted causes of action. Hence, the TTAB's finding that confusion is not inevitable is superfluous to the two claims asserted by petitioner.
 
 
 60
 However, in order for petitioner to be able to prove its infringement and unfair competition claims, an inevitability of confusion must be proved to avoid being estopped by acquiescence in use. Because a showing of inevitable confusion requires proof of a higher standard of confusion than does a likelihood of confusion, the latter is subsumed by a showing of inevitable confusion. Therefore, if inevitable confusion is shown at trial a likelihood of confusion is deemed established by issue preclusion.
 
 Remaining Issues
 
 61
 Petitioner asserts that the TTAB erred in finding that registrant committed no fraud on the PTO in violation of the Lanham Act.[66] We, however, are not impressed with a thorough conviction that the TTAB erred.
 
 
 62
 Registrant asserts that petitioner filed a frivolous appeal. We conclude there is nothing farther from the truth and deny registrants Rule 38 motion for attorney fees.[67]
 
 Conclusion
 
 63
 We conclude that the TTAB abused its discretion by estopping petitioner's cancellation proceedings because of acquiescence in registration. The petition is not estopped by acquiescence, and petitioner shall be allowed to prove servicemark resemblance, priority of trade identity rights and a likelihood of confusion at trial before the district court. With regard to the cancellation petition, geographical remoteness is not relevant to the likelihood of confusion.
 
 
 64
 We conclude that the district court erred by relying on a TTAB finding of no inevitability of confusion to preclude a finding of the requisite likelihood of confusion, and thereby dismissing the servicemark infringement and unfair competition claims. However, the claims may be estopped by acquiescence in use if petitioner fails to prove an inevitability of confusion. If inevitable confusion is proved, the likelihood of confusion is established by issue preclusion. Geographical remoteness is relevant to the confusion issues pertaining to the servicemark infringement and unfair competition claims.
 
 
 65
 We AFFIRM the TTAB's findings that no fraud was committed on the PTO by registrant, and that petitioner has not filed a frivolous appeal.
 
 
 66
 Accordingly, the summary judgment granted by the district court is REVERSED and REMANDED for trial.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The Coach House Restaurant, Inc. v. The Coach and Six Restaurants, Inc., 223 USPQ 176 (TTAB 1980)
 
 
 [2]
 Id. at 178
 
 
 [3]
 Review by the district court is permitted by Lanham Act Sec. 21(b)(1), 15 U.S.C. Sec. 1071(b)(1) (1988)
 
 
 [4]
 757 F.2d 1176, 1180, 226 U.S.P.Q. 123, 125 (11th Cir.), cert. denied 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985)
 
 
 [5]
 Id. at 1181, 226 U.S.P.Q. at 126 (originated in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894))
 
 
 [6]
 Boire v. Int'l Bhd. of Teamsters, 479 F.2d 778, 792 (5th Cir.1973)
 
 
 [7]
 Id
 
 
 [8]
 Fed.R.Civ.P. 56(c)
 
 
 [9]
 Freedom Sav. & Loan, 757 F.2d at 1181, 226 U.S.P.Q. at 126
 
 
 [10]
 Samples v. City of Atlanta, 846 F.2d 1328, 1331 (11th Cir.1988)
 
 
 [11]
 Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 1026, 213 USPQ 185, 187 (CCPA 1982)
 
 
 [12]
 See Lanham Act Sec. 14(1), 15 U.S.C. Sec. 1064(1)
 
 
 [13]
 Plastilite Corp. v. Kassnar Imports, 508 F.2d 824, 826, 184 U.S.P.Q. 348, 350 (CCPA 1975)
 
 
 [14]
 15 U.S.C. Sec. 1052(d) (1988) via Lanham Act Sec. 3, 15 U.S.C. Sec. 1053 (1988)
 
 
 [15]
 Boire, 479 F.2d at 792
 
 
 [16]
 Lanham Act Sec. 19, 15 U.S.C. Sec. 1069 (1988)
 
 
 [17]
 Hitachi Metals Int'l Ltd. v. Yamakyu Chain Kabushiki Kaisha, 209 USPQ 1057, 1067 (TTAB 1981). The distinction may be significant because in a general case a party who is guilty of active consent may be found less deserving of relief than a party guilty of mere passive consent
 
 
 [18]
 See Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517, 224 U.S.P.Q. 552, 558 (11th Cir.1984). This prima facie case is modified from the laches prima facie case set forth in Conagra. Although Conagra involved the defense of laches in an infringement case and the case at bar involves the defense of acquiescence in a cancellation proceeding, the two doctrines are sufficiently cognate to justify recognition of a prima facie case in similar circumstances
 
 
 [19]
 Lanham Act Sec. 22, 15 U.S.C. Sec. 1072 (1988)
 
 
 [20]
 Conagra, 743 F.2d at 1517, 224 U.S.P.Q. at 559
 
 
 [21]
 15 U.S.C. Sec. 1052(d)
 
 
 [22]
 Towers v. Advent Software, Inc., 913 F.2d 942, 946, 16 U.S.P.Q.2d 1039, 1042 (Fed.Cir.1990)
 
 
 [23]
 15 U.S.C. Sec. 1052(d)
 
 
 [24]
 Towers, 913 F.2d at 946, 16 U.S.P.Q.2d at 1042
 
 
 [25]
 1 J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION Sec. 16:2 (2d. ed. 1984)
 
 
 [26]
 Id
 
 
 [27]
 American Television & Communications Corp. v. American Communications & Television, Inc., 810 F.2d 1546, 1548, 1 U.S.P.Q.2d 2084, 2085 (11th Cir.1987)
 
 
 [28]
 Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183, 207 U.S.P.Q. 278, 282 (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981)
 
 
 [29]
 American Television & Communication Corp. v. American Communications & Television, Inc., 810 F.2d 1546, 1548, 1 U.S.P.Q.2d 2084, 2086 (11th Cir.1987)
 
 
 [30]
 Id
 
 
 [31]
 Id
 
 
 [32]
 Id. at 1549, 1 U.S.P.Q.2d at 2086
 
 
 [33]
 Id
 
 
 [34]
 Id
 
 
 [35]
 Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc., 780 F.2d 1324, 1330, 228 U.S.P.Q. 429, 431 (8th Cir.1985)
 
 
 [36]
 AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1536 n. 14 (11th Cir.1986)
 
 
 [37]
 Conagra, 743 F.2d at 1513, 224 U.S.P.Q. at 555
 
 
 [38]
 Soweco, 617 F.2d, at 1183 n. 12, 207 U.S.P.Q. at 282 n. 12
 
 
 [39]
 Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 849, 165 U.S.P.Q. 37, 41 (5th Cir.) cert. denied, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90, reh'g denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 95 (1970)
 
 
 [40]
 3 U.S.P.Q.2d 1553 (TTAB 1987)
 
 
 [41]
 The district court concluded the TTAB's finding involved no genuine issue of material fact and that the applicable law entitled registrant to a judgment on the inevitability of confusion issue
 
 
 [42]
 Lanham Act Sec. 2(d), 15 U.S.C. Sec. 1052(d)
 
 
 [43]
 Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1164, 216 U.S.P.Q. 599, 602 (11th Cir.1982)
 
 
 [44]
 See Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1489, 5 U.S.P.Q.2d 1190, 1194 (11th Cir.1987) (remanded because district court completely disregarded the multifactor analysis in finding no likelihood of confusion)
 
 
 [45]
 Id
 
 
 [46]
 Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 840, 222 U.S.P.Q. 10, 18 (11th Cir.1983)
 
 
 [47]
 15 U.S.C. Sec. 1057(b) (1988)
 
 
 [48]
 Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1568 (Fed.Cir.1983)
 
 
 [49]
 American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 626, 136 U.S.P.Q. 286, 292 (5th Cir.1963); Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 365, 121 U.S.P.Q. 430, 432 (2d Cir.1959)
 
 
 [50]
 (Emphasis added)
 
 
 [51]
 Hitachi Metals, 209 U.S.P.Q. at 1067
 
 
 [52]
 Conagra, 743 F.2d at 1516, 224 U.S.P.Q. at 557
 
 
 [53]
 Id. (citing Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888))
 
 
 [54]
 Id
 
 
 [55]
 Id. at 1517, 224 U.S.P.Q. at 558
 
 
 [56]
 Coach House Restaurant, 223 USPQ at 178
 
 
 [57]
 Iodent Chemical Co. v. Dart Drug Corp., 207 USPQ 602, 607 (T.T.A.B.1980)
 
 
 [58]
 Id
 
 
 [59]
 Id. at 606
 
 
 [60]
 See Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1916) (superseded by statute in irrelevant part Foxtrap, Inc. v. Foxtrap, Inc., 217 U.S.App.D.C. 130, 671 F.2d 636, 215 U.S.P.Q. 1105 (1916))
 
 
 [61]
 El Chico, Inc. v. El Chico Cafe, 214 F.2d 721, 725, 102 U.S.P.Q. 267, 270 (5th Cir.1954)
 
 
 [62]
 Hanover Star Milling, 240 U.S. at 415, 36 S.Ct. at 361
 
 
 [63]
 Lanham Act Sec. 43(a), 15 U.S.C. Sec. 1125(a) (1988)
 
 
 [64]
 Freedom Sav. & Loan Ass'n, 757 F.2d at 1186, 226 U.S.P.Q. at 130
 
 
 [65]
 Lanham Act Sec. 43(a), 15 U.S.C. Sec. 1125(a)
 
 
 [66]
 Lanham Act Sec. 38, 15 U.S.C. Sec. 1120 (1988)
 
 
 [67]
 Fed.R.App.P