MYSTIQUE, INC., Plaintiff,

v.

138 INTERNATIONAL,
INC., Defendant.

Case No. 07–22937–CIV.

United States District Court,
S.D. Florida.

Feb. 12, 2009.

Matthew Scott Nelles, Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, for Plaintiff.

Alan Howard Ramer, Dick Lee & Associates, Coral Gables, FL, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

EDWIN G. TORRES, United States Magistrate Judge.

The case before the court is an action brought on behalf of Plaintiff Mystique, Inc. hereinafter ("Plaintiff") against 138 International, Inc. ("Defendant") to cancel a federal trademark registration under 15 U.S.C. § 1064 and for federal trademark infringement under 15 U.S.C. § 1125. Upon review of the motion, Defendant's response, and the record in the case, the Court finds that there are no genuine issues of fact precluding summary judgment as to Count I of Plaintiff's Complaint.

## I. FACTS

Plaintiff Mystique, Inc. ("Mystique") seeks an injunction against Defendant's continued infringement of its MYSTIQUE mark and also seeks to cancel Defendant's federal trademark registration for "Mystique."

Yamin Levy, President of Plaintiff Mystique created the name MYSTIQUE in January 1999. Mystique began doing business as MYSTIQUE in January 2000;

it filed its articles of incorporation in California on August 28, 2000. Plaintiff manufactures and wholesales its high-end ladies fashion sandals. As early as January 2000 it imported, sold and distributed ladies shoes bearing the Mystique mark in the United States and as early as October 2000, Mystique distributed its sandals in Florida, including the Southern District. As early as February that year it sold its sandals to famous upscale retailers such as Anthropologie, Nordstrom, Neiman Marcus, Saks Fifth Ave. and Dillard's throughout the country. As early as March 2000, Mystique also began selling sandals to retailers outside the United States.

Mystique's sales and distributions continued throughout the United States and Florida in 2001, having at least 40 Florida customers in 2001. One particular retailer, Koko & Palenki in Miami–Dade County, has steadily increased its purchases from Mystique to approximately 3,000 per year. As early as January 2001, Mystique's sandals were featured routinely and repeatedly in various internationally distributed periodicals, including Cosmopolitan, People, Vogue, Glamour, Elle, Allure, Self, Oprah, Us, and InStyle.

Since as early as 2000, Mystique has marketed, promoted, and sold its sandals at trade shows throughout the United States, as well as through its internet website and through direct email solicitation. Mystique's sales of MYSTIQUE shoes were $509,362 in 2000 and $773,000 in 2001 and sales continued to grow to a high of $5,918,000 in 2006. Mystique has developed consumer recognition and national and international exposure as a result of its significant ongoing advertising and promotional efforts for its MYSTIQUE shoes.

Defendant 138 International ("138") is also a shoe seller, but does not specialize in one brand of shoes or sell only ladies footwear. On November 1, 2001, 138 filed a U.S. application to register the mark "Mystique" for women's footwear, namely sandals, slippers, shoes, and sneakers. The application indicates the first use of the mark to be June 1, 2000.

In opposition to Plaintiff's motion for summary judgment, Defendant produced correspondence with its factory in China that indicated intended use of the Mystique mark in late 2000. It also provided documents that indicate shipment of shoes from the factory in early 2001; however, nowhere do these documents identify the shipment as Mystique shoes. (Defendant's Composite Exhibits 1 and 2). Defendant also provided order forms for shoes bearing the Mystique label from December 2000, with delivery of this order apparently occurring in February 2001. (Composite Exhibit 4 and 5). However, Defendant provided no documentary evidence that it in fact *used* the Mystique mark in any form other than in correspondence with its overseas factory during this time. Defendant has no evidence of advertisement or promotion anywhere during the year 2000 and its Mystique shoes did not appear in any of its catalogues prior to fall 2001.

In other words, there is no genuine issue of fact that Defendant ever used the Mystique mark on its shoes, as indicated in its trademark registration, as of June 1, 2000. Yet in June 2006 the Trademark Examiner refused registration of Mystique's MYSTIQUE mark based on Defendant's prior registration. This record, however, shows that this registration was almost three years after Plaintiff's creation of the mark and two years after Mystique had begun selling its line of shoes in commerce.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. The Registration Should be Cancelled

Under 15 U.S.C. § 1064, "[a] petition to cancel a registration of a mark, stating the grounds relied upon, may ... be filed as follows by any person who believes that he is or will be damaged ... by registration of a mark on the principal register." 15 U.S.C. § 1064(1) places the time limitation of this petition within five years of the date of registration. Section 37 of the Lanham Act, 15 U.S.C. § 1119, empowers the Court to cancel a registration.

■ In order to cancel a registration of a mark, a plaintiff must show (1) that it has standing to petition to cancel in that it is likely to be damaged by the registration; and (2) that there are valid grounds why registration should not continue to be registered. *Coach House Restaurant v. Coach & Six Restaurants*, 934 F.2d 1551, 1557 (11th Cir.1991).

Under section 2 of the Lanham Act, a plaintiff's prior use of a confusingly similar mark is grounds for cancellation of the registrant's mark:

In order to cancel a registration under the Lanham Act section 2(d) ..., petitioner must prove: (1) that the registered mark resembles petitioner's mark, (2) that petition acquired trade identity rights in the mark before the registrant used the mark, and (3) that the registered mark is likely to cause confusion when used in connection with the services of registrant.

*Id.* at 1559. In this case, it is not disputed that the MYSTIQUE mark is an inherently distinctive mark. For such marks, a "business will obtain rights in the mark upon first use." *Id.*

*(1)*

■ The first element required for cancellation of Defendant's "Mystique" mark has been met. Defendant appropriated a mark that is identical to Mystique's mark. This satisfies the first requirement of a registered mark resembling Mystique's mark. *See id.* at 1559 ("It is evident that the registered mark resembles petitioner's mark because both marks utilize the identical logo.").

*(2)*

■ The second element required for cancellation—acquisition of trade identity

rights before the registrant—has also been satisfied. There is no genuine issue of fact that Mystique engaged in widespread sales of its MYSTIQUE shoes as early as January 2000. By the time Defendant began using its own mark in October 2001, almost two years later, Mystique had sold and distributed its shoeware throughout the United States and in this District. Thus Mystique had clearly acquired all trade identity rights in the mark before Defendant's first use.

"When a manufacturing seller normally distributes to retailers and not to consumers, the first bona fide sale to a retailer establishes priority." 2 *McCarthy on Trademarks and Unfair Competition,* § 16:5 (2007). Courts have found priority in some cases in as little as one month's difference. *See, e.g., Blue Bell v. Farah Mfg. Co.,* 508 F.2d 1260 (5th Cir.1975).

Defendant's earliest relevant evidence of use are importation documents dated February 6, 2001. On the other hand, Mystique has documentation of its incorporation in August 2000 and sales to retailers as early as February 2000. This is not to say that Defendant's importation documents are sufficient to qualify as "bona fide sales" but rather it is in the interest of making every possible inference on their behalf. *Planetary Motion* addresses the validity of this claim very directly: "[t]o warrant protection, use of a mark 'need not have gained wide public recognition,' but '[s]ecret undisclosed internal shipments are generally inadequate.'" *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1196 (11th Cir.2001) (citing *Blue Bell, Inc. v. Farah Mfg. Co.,* 508 F.2d 1260, 1265 (5th Cir.1975)).

 Additionally, Plaintiff's earlier use of the Mystique mark serves to identify the source of the shoes and distinguish them from other ladies footwear in the market. *Planetary Motion, Inc.,* 261 F.3d at 1197. This use also put potential users of the mark, such as 138, on notice of its use in connection with ladies footwear. *Id.*

Without at least some public disclosure or attempt to associate the name "Mystique" with the product Defendant's use is inadequate. The evidence establishes in this case that Plaintiff's prior use predates that of Defendant by at least six months; its use of Mystique properly constitutes "use in commerce" sufficiently public to create ownership rights in the mark.

*(3)*

 Finally, the third element required for cancellation of the mark—likelihood of confusion—has also been satisfied as a matter of law. This requires that a plaintiff show that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *Planetary Motion,* 261 F.3d at 1193. Confusion can be determined by the court weighing the seven factors set forth by this circuit: Type of mark, similarity of mark, similarity of the goods the marks represent, similarity of the parties' retail outlets and customers, similarity of advertising media, defendant's intent, and actual confusion. *Frehling Ent., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999).

*Type of Mark*

 Neither party has advanced evidence that "Mystique" is not an "arbitrary" mark. *Frehling,* 192 F.3d 1330, 1336 (arbitrary marks require the highest level of protection). The plain meaning for the term 'mystique' has no apparent asso-

ciation with ladies footwear; and as such, deserves the highest level of protection. *Id.*

### Similarity of the Marks

Both parties attempt to assert a claim over the use of the word "Mystique" in relation to ladies footwear. In *Frehling*, this circuit concluded that words of similar origins on similar products were similar enough to establish a likelihood of confusion. *Id.* at 1337 (Bell'Oggetti is similar to Oggetti). Here the similarity is even more striking as both sides claim usage of the same word thus the likelihood of confusion is more apparent.

### Similarity of the Goods the Marks Represent

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not that purchasing public can readily distinguish between the products of the respective parties." *Id.* at 1338 (citing *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imps, Inc.,* 756 F.2d 1525, 1530 (11th Cir.1985)). In this instance there are two companies both distributing ladies sandals with the imprinted name "Mystique" on them, in substantially similar styles. The reasonable consumer would have no way of distinguishing between a Mystique Inc. brand sandal and a "Mystique" by 138 sandal.

For instance, *Frehling* dealt with two furniture companies that sold to very different markets (custom built armoires and do it yourself electronics furniture) finding that a reasonable consumer could mistake the two. *Frehling,* 192 F.3d 1330 at 1338. Here the two goods sell to the same market and appeal to the same customers. No distinction has been made between the sandals that both companies produce other than the quality of materials.

### Similarities of the Parties' retail outlets and customers

Dissimilarities between retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception. *Id.* at 1339. Plaintiff and Defendant both use trade shows, direct mailing and the employment of commission based salespeople. Both sell wholesale shoes to retailers. This factor takes into consideration where, how, and to whom the parties' products are sold. 4 McCarthy, *supra,* § 24:51, at 24–71. If both parties sell to similar people through similar means in similar locations, its natural that a likelihood of confusion would arise. In the present case such a scenario exists.

### Similarity of Advertising Media

Both parties use catalogs and trade show attendance to advertise their brands. Both parties also submitted email correspondence as evidence of eliciting sales from customers. There could be significant enough overlap of consumers in the various advertising media used by the parties such that a possibility of confusion exists. *Frehling,* 192 F.3d at 1340. Defendant fails to draw any distinction between their advertising and that of Plaintiff, so the court is left with the record indicating substantial similarity between the two and a likelihood of confusion.

### Defendant's Intent

In reviewing the evidence, there are no set rules as to how much evidence of confusion is needed; rather, a district court must take into consideration the circumstances surrounding each particular case. *Lone Star Steakhouse & Saloon, Inc. v.*

*Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997). Plaintiff has failed to proffer documentary evidence of wrongful intent on the part of Defendant. However, all seven elements of the *Frehling* test need not be proven. If the totality of the circumstances, as indicated in the *Lone Star* case, show likelihood of confusion then there is no disputed relevant factual issue.[1]

### Actual Confusion

Evidence of actual confusion is the best evidence towards a finding of a likelihood of confusion. *Frehling*, 192 F.3d at 1340 (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983)). Principals of both parties testified at their depositions that there were instances in which their brand was confused for their competitor. Defendant's owner Mike Chen testified that there were at least ten instances of confusion he could account for between telephone calls and patrons at trade shows mistaking his "Mystique" line for Plaintiff's line. This admission weighs heavily in favor of their being a likelihood of confusion because it shows repeated confusion among knowledgeable buyers.

### III. CONCLUSION

In short, we conclude that there is, as a matter of law, a likelihood of confusion between the two lines of "Mystique" shoes. We must also conclude that Plaintiff has established priority through its documentary evidence that materially predates all of Defendant's evidence of use. Accordingly, there is no genuine issue of fact thus

entitling Plaintiff to summary judgment on its cancellation claim. As a matter of law, there is more than a sufficient basis to cancel Defendant's trademark registration pursuant to 15 U.S.C. § 1064, as per 15 U.S.C. § 1119. Judgment shall be entered in Plaintiff's favor on Count I of Plaintiff's complaint.

---

1. Defendant may also assert that intent cases are particularly inappropriate for summary judgment, however, numerous cases following the line of *Lone Star, Frehling, and Planetary Motion* have been decided on summary judgment. Since this element is only an one of many factors, the totality of the circumstances standard still allows for entry of summary judgment.